UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDWARD SHEARER,

    Plaintiff,

v.                                                                 Case No. 1:17-cv-174
                                                                 Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

**OPINION**

       Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration (Commissioner) which denied his claim for disability insurance benefits (DIB) and supplement security income (SSI).

       Plaintiff alleged a disability onset date of January 1, 2013, which he later amended to August 13, 2015. PageID.40, 221. Plaintiff identified his disabling conditions as: herniated discs, bone spurs, a pinched nerve, pain, and limited mobility in the cervical spine; pain and numbness "down both arms," radiating pain down the back; weight restriction of 20 pounds; radiating pain down both legs; muscle spasms; and migraine headaches. PageID.225. Prior to applying for DIB and SSI, plaintiff completed the 11th Grade and had past employment as a forklift operatory, owner of a painting business, and truss assembler. PageID.52, 227. An administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on October 28, 2016. PageID.40-54.

1

## I. LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905

F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

3

## II. ALJ's DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since the amended alleged onset date of August 13, 2015, and met the insured status requirements of the Social Security Act through March 31, 2017. PageID.42.

At the second step, the ALJ found that plaintiff had severe impairments of: degenerative disc disease of the cervical spine with radiculopathy and neck pain status post construction injury; bursitis, left shoulder; right shoulder pain status post injury; adjustment disorder with depressed mood; and drug abuse. PageID.42. At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.43.

The ALJ decided at the fourth step that:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can occasionally lift or carry 20 pounds and frequently lift or carry ten pounds. He can stand or walk for six hours and sit for six hours. The claimant can never climb ladders, ropes or scaffolds; kneel or crawl. He can occasionally climb stairs and ramps; balance; stoop and crouch. The claimant can frequently reach, handle, finger and feel with either hand. He can never work around hazards such as unprotected heights or unguarded, uncovered, moving machinery. The claimant can carry out simple instructions. He can tolerate routine changes in the workplace.

PageID.45. The ALJ also found that plaintiff is unable to perform any past relevant work. PageID.52.

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled jobs at the light exertional level in the national economy. PageID.53-54. Specifically, the ALJ found that plaintiff could perform the requirements of light and unskilled occupations in the national economy such as cleaner (191,000 jobs), cashier (1,100,000 jobs), and

price marker (283,000 jobs). PageID.53. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from August 13, 2015 (the amended alleged onset date) through October 28, 2016 (the date of the decision). PageID.53-54.

### III. DISCUSSION

Plaintiff set forth on issue one appeal:

**The ALJ failed to comply with the procedural aspect of the treating physician rule in evaluating Mark Clark, M.D.'s treating source opinion.**

Plaintiff contends that the ALJ's rejection of Dr. Clark's treating physician opinion is not supported by substantial evidence and that the ALJ failed to comply with the procedural aspect of the treating physician rule. A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

The ALJ addressed Dr. Clark's opinion based, in part, on the medical history developed by Shanti Tanna, M.D. To properly evaluate Dr. Clark's opinion, the Court will set forth the ALJ's evaluation of Dr. Tanna's findings in full:

> As for the opinion evidence, on March 1, 2016, Shanti Tanna, M.D., state agency medical consultant, opined the claimant is suited for a light exertional level. She noted the claimant can frequently climb ramps and stairs; stoop; kneel; crouch and crawl. She indicated the claimant can occasionally climb ladders, ropes or scaffolds (lA/9-10; 2A/9-10). She reported the claimant can frequently finger and feel with the right hand (1A/11; 2A/11). I give her opinion great weight as to a finding that the claimant is suited for a light exertional level and is not disabled. Her opinion is generally consistent with objective medical evidence showing unremarkable physical examinations. For instance, on occasion, the claimant demonstrated reduced range of motion and exhibited pain to palpation in his cervical spine (2F/4, 8; 5F/8, 12; 17F/10). However, he consistently had 5/5 muscle strength and normal muscle tone (1F/10; 2F/4, 9; 5F/8, 12; 7F/4; 12F/7, 12; 18F/6). Additionally, during multiple occasions, he exhibited minimal cervical tenderness (1F/3; 7F/4; 11F/15; 14F/28, 35). Furthermore, on numerous other occasions, he had full range of motion of his neck (3F/4; 5F/ 18; 7F/4; 13F/11; 15F/32; 18F/6). As for his shoulder impairments, MRIs of both of the claimant's shoulders were unremarkable (14F/15). During examinations, he had equal strength and sensation in all four of his extremities (14F/14, 23; 18F/26). He had normal motor strength on a number of occasions (19F/7, 12, 18). He also normal range of motion and equal grip strength (14F/14, 23, 28). However, based on evidence and the claimant's

subjective complaints such as radiating neck pain into his bilateral arms and shoulder pain (see e.g. 2F/2-3, 7; 7F/2; 13F/7-8; 14F/22), I find slightly more restrictive postural limitations. I also find he has manipulative limitations in both his hands and can never work around hazards.

PageID.50-51.

The ALJ then addressed Dr Clark's opinions as follows:

On June 22, 2016, Mark Clark. M.D., treating physician, opined the claimant would be off task 25 percent of a typical workday due to his symptoms. He indicated the claimant is incapable of even low stress jobs (16F/4). He opined the claimant needs periods of walking during an eight-hour day. He stated that the claimant needs a job that permits shifting positions at will from sitting, standing or walking. He noted the claimant can rarely lift less than ten pounds. He opined the claimant can occasionally hold his head in a static position but that he can rarely look down, turn his head right or left or look up (16F/5). He indicated the claimant has significant limitations with reaching, handling and fingering. Finally, he reported the claimant would be absent from work more than four days per month as a result of his impairments or treatments (16F/6). I give his opinion little weight as to a finding that the claimant is disabled. His opinion is not supported by objective medical evidence. The evidence supporting this conclusion, and showing the claimant does not have disabling symptoms, has already been described directly above in assessing Dr. Tanna's opinion.

PageID.51.

Plaintiff contends that the ALJ's decision is flawed because the ALJ did not take into account plaintiff's worsening condition between the date of Dr. Tanna's evaluation (March 1, 2016) and Dr. Clark's opinion (June 22, 2016). Dr. Tanna examined plaintiff less than two weeks after plaintiff's February 18, 2016 surgery which involved three procedures: anterior cervical discectomy for decompression of spinal cord and nerve roots at C5-C6; interbody fusion at C5-C6; and interbody cage placement at C5-C6. PageID.593, 631-632. In his assessment, Dr. Clark noted that plaintiff's condition worsened after the surgery. PageID.578. Plaintiff identifies medical records which indicate that plaintiff underwent a number of diagnostic tests after Dr. Tanna's examination. These tests include: a March 29, 2016 MRI of the right shoulder (noting intramuscular edema in the supraspinatus and infraspinatus, AC joint osteoarthritis, and

7

questionable labral tearing, PageID.604-605); a March 29, 2016 physical examination by Dr. Clark (noting decreased cervical range of motion, decreased shoulder flexion and extension, positive Spurling's test, positive facet loading maneuver, and decreased reflexes at the biceps and triceps, PageID.593-594); an April 26, 2016 examination by Dr. Clark (noting decreased cervical rotation and extension, a positive Spurling's test, markedly decreased right arm abduction, and decreased pinprick on the right at C5-6, PageID.591-592); an April 8, 2016 MRI of the cervical spine (noting mild disc bulge and spondylosis, mild facet hypertrophy, and minimal foraminal narrowing at C3-4; disc flattening, spondylosis, severe facet hypertrophy, and severe foraminal narrowing at C4-5; and spondylosis, facet hypertrophy, and foraminal narrowing at C5-6 with the hardware in place anteriorly, PageID.478); and, a May 5, 2016 EMG (which was significant for cervical radiculopathy, PageID.602).

Based on this record, it appears to the Court that the ALJ did not evaluate Dr. Clark's opinion in light of the objective medical evidence of plaintiff's condition between Dr. Tanna's March 1, 2016 opinion and Dr. Clark's June 22, 2016 opinion. During that time period, plaintiff underwent 2 MRIs, an EMG, and two episodes of clinical testing by Dr. Clark. It is not for this Court to review this evidence which may, or may not, support Dr. Clark's opinion. *See generally, Brainard*, 889 F.2d at 681. Accordingly, this matter will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate Dr. Clark's opinion in light of the MRIs, EMG, clinical testing, and other medical examinations and treatments which took place between March 1, 2016 and June 22, 2016.

### IV. CONCLUSION

For these reasons, the Commissioner's decision will be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner

is directed to re-evaluate Dr. Clark's opinion. In performing this re-evaluation, the Commissioner is directed to consider the MRIs, EMG, clinical testing, and other medical examinations and treatments which took place between March 1, 2016 and June 22, 2016. A judgment consistent with this opinion will be issued forthwith.


Dated: March 29, 2018               /s/ Ray Kent
                                    United States Magistrate Judge